IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES CHARLES YOUNG,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL NO. 1:CV-06-01178** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **DONALD KELCHNER,** *et al.,* | : | |
| | : | |
| **Respondents.** | : | |

# M E M O R A N D U M

Petitioner, James Charles Young, an inmate presently confined at the State

Correctional Institution at Camp Hill, Pennsylvania ("SCI-Camp Hill"), filed, *pro*

*se*, the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to

challenge his 2001 conviction and sentence in the Dauphin County Court of

Common Pleas ("trial court") on fourteen (14) counts of criminal solicitation and

one (1) count of criminal use of a communication facility.  (Doc. 1.)  Specifically,

Petitioner contends that his decision to proceed to trial *pro se* was not knowing,

intelligent, and voluntary, and, thus, in violation of his right to counsel under the

Sixth Amendment to the United States Constitution.  Consequently, Petitioner is

requesting the court vacate his sentence and remand to the trial court for a new

trial with appointed counsel.  This court has jurisdiction to entertain the habeas

1

corpus petition under 28 U.S.C. § 2241, and this matter is now ripe for

consideration. For the reasons that follow, the petition will be denied.

## I.  Factual and Procedural Background

The following factual background is extracted from the Pennsylvania

Superior Court's opinion affirming the judgment of sentence.  (Doc. 11-10, Ex. 14,

Superior Court of Pennsylvania Opinion dated April 28, 2005.)[1]

> The testimony adduced at the time of trial established
> that in March of 2001, Young began posting messages
> on an Internet chat room.  Young initiated
> communications in the chat room with an undercover
> law enforcement officer, Agent Dennis Guzy.  Agent
> Guzy was posing as the father of two imaginary minor
> girls, ages nine and twelve years old.  Young solicited a
> sexual encounter proposal with the two minors to Agent
> Guzy.  Thereafter, Young proposed to Agent Guzy a
> meeting with him and his daughters, with the intent to
> engage in sexual acts with the two young girls.  On
> March 20, 2001, Young appeared at the agreed upon
> location, at which time Agent Guzy identified himself as
> the Pennsylvania Child Sexual Exploitation Task Force
> lead investigator.  Young was subsequently arrested on
> March 29, 2001.

(*Id*. at 2.)

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by the State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Petitioner was charged with fourteen (14) counts of criminal solicitation in violation of 18 Pa. Const. Stat. Ann. § 902(a) and one (1) count of criminal use of communication facility in violation of 18 Pa. Const. Stat. Ann. § 7512.  The case was scheduled for trial in September 2001, and again in October 2001, but was then placed on the hold list.  On November 6, 2001, the case was called to trial before the Honorable John F. Cherry, at which time Petitioner was represented by private counsel, Attorney John Glace.

However, that day Attorney Glace requested a continuance in order to allow Petitioner to satisfy his financial obligations to him.  Petitioner had failed to remit the attorney's fees associated with the trial; however, the parties reached an agreement as to forthcoming payment.  Specifically, Petitioner agreed to tender a partial payment of fees by Friday, November 9, 2001, and would pay in full the balance on or before November 26, 2001.  Attorney Glace informed the trial court that should Petitioner fail to remit full payment he would petition the court to withdraw as counsel.  Petitioner stated that he understood this arrangement.  (Doc. 11-4, Ex. 1, Notes of Testimony of Continuance Proceeding dated November 6, 2001 at 3.)

After Attorney Glace set forth the financial arrangement, the following exchange between Attorney Glace and Petitioner occurred:

3

| | |
|---|---|
| Attorney Glace: | And do you understand that your case, notwithstanding if you have counsel or not, will be called December 3rd in Judge Evans' courtroom? |
| [Petitioner]: | That is correct. |
| Attorney Glace: | You will proceed to trial.  By November 26th I will either be counsel or not counsel. |
| [Petitioner]: | That is correct. |

\* \* \*

| | |
|---|---|
| Attorney Glace: | . . . You have to remit to my office those two payments as I have stated. If I don't have those things [on November 26, 2001] at 9:00 o'clock, I will walk over here with an order saying that I am withdrawing as counsel and there will not be replacement counsel.  You will represent yourself pro se. |
| [Petitioner]: | That is correct. |

(*Id*. at 3-5.)  Following this exchange, the trial court stated:

| | |
|---|---|
| The Court: | All right.  I think he understands. . . . We are going to continue this matter upon motion of the defense attorney until December 3rd, 2001 at 8:30 a.m. . . . Sir, this may be your only notice. You must be present and sign in by |

4

8:30 a.m. on December 3rd on the
first floor.  Do you understand that?

[Petitioner]:        Yes, sir.

(*Id*. at 5.)  Thereafter, the Commonwealth's attorney conducted the following

colloquy with Petitioner:

Mr. Barker:        [Y]ou understand you do have a right
                   to an attorney?

[Petitioner]:        That is correct.

Mr. Barker:        If you can't afford one, one would be
                   appointed by the Court?

[Petitioner]:        That is correct.
Mr. Barker:        Have you reviewed these offenses
                   and different elements of it as well as
                   the penalties with Mr. Glace?

[Petitioner]:        Yes.

Mr. Barker:        Now, if you appear without an
                   attorney, there are certain things that
                   you may end up giving up without
                   knowing it.  For instance, there are
                   constitutional rights that have to be
                   asserted, defenses that have to be
                   asserted.  Objections that may have to
                   be raised and there are motions that
                   may be made by an attorney who
                   would know better how to do that.
                   The [Pennsylvania] Rules of Criminal
                   Procedure and [Pennsylvania] Rules

5

|                | of Evidence would apply to you.  Do you understand all of that? |
|----------------|-----------------------------------------------------------------|
| [Petitioner]:  | Yes, sir.                                                       |

(*Id*. at 5-6.)  Finally, the trial court concluded:

|                | |
|----------------|---|
| The Court:     | Just so you understand, you get no breaks because you are representing yourself.  Do you understand that? |
| [Petitioner]:  | Yes, sir. |
| The Court:     | You have a highly competent and skilled attorney here.  I would make sure that you do what you have to do to be prepared for December 3rd. |
| [Petitioner]:  | I shall. |

(*Id*. at 6.)

Petitioner did not satisfy his agreement with Attorney Glace, and as a result,

Attorney Glace filed a motion to withdraw as counsel on November 23, 2001.  In

his motion, filed prior to Petitioner's November 26th deadline,[2] Attorney Glace

verified that he had neither been paid by Petitioner, nor had Petitioner contacted

him to make further arrangements for payments.  In fact, Attorney Glace had not

been contacted by Petitioner at all since the November 6, 2001 hearing, despite

---

[2] Although Attorney Glace's motion was filed prior to Petitioner's November 26th deadline, the trial court did not consider and grant the motion until November 27, 2001.  *See infra* at 6.

Attorney Glace's repeated efforts to contact Petitioner by written correspondence, telephone calls, and electronic mail.  (Doc. 11-8, Ex. 4, Motion to Withdraw filed by counsel for Petitioner, John M. Glace, Esq., on November 23, 2001 at 2.) Attorney Glace noted that he had formerly expressed to Petitioner his availability and willingness to work with new legal counsel to assure optimal transfer of representation.  (*Id*.)  He also contacted the Dauphin County Public Defender's office to advise that they may be contacted by Petitioner.  (*Id*. at 3.)  The trial court granted Attorney Glace's motion to withdraw on November 27, 2001.

On December 3, 2001, Petitioner appeared for trial before the Honorable Scott A. Evans without counsel.  As a preliminary matter, the trial court reviewed the proceedings of November 6, 2001, before Judge Cherry.  Specifically, Judge Evans stated:

> We note, beginning on Pages 5 and 6, Mr. Barker, who was Assistant District Attorney, explained to [Petitioner] his right to have an attorney present, and if he could not afford one, one would be appointed by the Court; and, further, explained to the defendant that if he fails to acquire counsel, either by appointment or by contracting with an attorney, that he will be appearing as counsel for himself, which he is permitted to do, but he would be held to the same standards and rules of criminal procedure and evidence that would apply to any counsel.

7

(Doc. 11-4, Ex. 2, Notes of Testimony of Jury Trial dated December 3-5, 2001 at

5.)

Additionally, Judge Evans examined Petitioner on the record:

| | |
|---|---|
| [The Court]: | Mr. Young, I will ask you, have you acquired an attorney?  Have you hired a lawyer to represent you? |
| [Petitioner]: | No, sir. |
| The Court: | It is your desire to represent yourself then here today? |
| [Petitioner]: | Yes, sir. |
| The Court: | And you are prepared to proceed? |
| [Petitioner]: | Yes. |

(*Id*. at 5-6.)

The trial court then conducted a jury trial with Petitioner proceeding *pro se*.

Petitioner was found guilty on all charges.  On March 22, 2002, Petitioner

appeared for sentencing and was represented by an attorney from the Dauphin

County Public Defender's office.  Petitioner received an aggregate sentence of

incarceration for not less than nine (9) nor more than twenty four (24) years, fines

totaling $1,000, and the costs of prosecution.  (Doc. 11-8, Ex. 3, Notes of

Testimony of Sentencing dated March 22, 2002 at 10.)

8

On April 8, 2002, the Public Defender's office filed a notice of appeal with the Pennsylvania Superior Court.  On April 10, 2002, that court ordered Petitioner to file with the trial court a statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) and a supporting brief within fourteen (14) days.  Before that due date, the trial court granted Petitioner an extension and gave him fifteen (15) days to file from the date that the trial transcripts were lodged.  The trial transcripts were lodged on May 1, 2002.  Noting that Petitioner had failed to file the 1925(b) statement in a timely fashion, the trial court issued an opinion on May 20, 2002, finding that Petitioner resultantly had waived all appellate issues.  Petitioner, however, filed the 1925(b) statement on May 22, 2002.  The Pennsylvania Superior Court, in an unpublished memorandum dated December 5, 2002, affirmed the judgment of sentence finding that Petitioner had waived all issues for review based on his failure to timely file a 1925(b) statement.  (Doc. 11-9, Ex. 8, Memorandum Opinion of the Superior Court of Pennsylvania filed December 5, 2002.)

On July 9, 2003, Petitioner filed, *pro se*, a petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa. Const. Stat. Ann. §§ 9541 *et seq*.  (Doc. 11-9, Ex. 9, Petition for Relief under the PCRA filed July 9, 2003.)  The trial court, sitting as the PCRA court, appointed counsel and a timely amended PCRA

petition was filed.  (Doc. 11-9, Ex. 10, Amended Petition for Relief under the

PCRA filed September 10, 2003.)  On December 31, 2003, the PCRA court

granted Petitioner relief by reinstating his direct appeal rights *nunc pro tunc* due to

appellate counsel's ineffective assistance.  (Doc. 11-9, Ex. 11, Order of Court

dated December 31, 2003.)

As a result of the reinstatement of direct appeal rights, Petitioner filed a

second notice of appeal on January 14, 2004, challenging the voluntariness of his

waiver of the right to counsel.  (Doc. 11-9 & 10, Ex. 12, Brief for Petitioner to the

Superior Court of Pennsylvania filed May 18, 2004.)  The Court of Common Pleas

of Dauphin County rejected Petitioner's claim, concluding that Petitioner had

knowingly and voluntarily waived his right to counsel.  (Doc. 11-10, Ex. 13,

Opinion of the Court of Common Pleas of Dauphin County filed December 17,

2004.)  Subsequently, on appeal, in an opinion filed April 28, 2005, the

Pennsylvania Superior Court also rejected Petitioner's claim and affirmed the

judgment of sentence.  (Doc. 11-10, Ex. 14.)

Petitioner then filed a timely petition for allowance of appeal to the

Pennsylvania Supreme Court, raising the same argument challenging the

voluntariness of his waiver of the right to counsel.  (Doc. 11-11, Ex. 15, Petition

for Allowance of Appeal to the Supreme Court of Pennsylvania filed May 31,

2005.)  On September 2, 2005, the Pennsylvania Supreme Court denied the

allowance of appeal.  (Doc. 11-11, Ex. 16, Order of the Supreme Court of

Pennsylvania filed September 2, 2005.)  Thereafter, on November 28, 2005,

Petitioner filed, *pro se*, a petition for a writ of certiorari in the United States

Supreme Court, which was denied on February 21, 2006.  *Young v. Pennsylvania*,

126 S. Ct. 1348 (2006).  Following the Supreme Court's denial, Petitioner filed the

instant petition on June 12, 2006.


**II.   Discussion**

Petitioner raises two issues in his habeas petition:

(1)   Whether the District Attorney's colloquy, in the
Motions Court, was sufficient, under the Fifth[3] and
Sixth Amendments of the United States
Constitution, to execute a knowing, intelligent and
voluntary waiver to representation of counsel, to
commence a month later, in the Trial Court?

(2)   Whether the Trial Judge adequately performed his
constitutional responsibilities, concerning the
Petitioner's self-representation, under the Fifth,
Sixth and Fourteenth Amendments of the United

---

[3] Petitioner's reference to a Fifth Amendment substantive due process claim is unavailing, as in his brief in support of his petition he, first, simply asks the court a question, and, second, refers to a "structural error."  (Doc. 2 at 15.)  The court concludes that Petitioner has presented no argument with regard to the Fifth Amendment and, thus, will address only his Sixth Amendment argument.

States Constitution, in the Trial Court, regarding
the colloquy?

(Doc. 2 at 4.)  In response, Respondents maintain that Petitioner procedurally

defaulted his claim that the colloquy was insufficient in order for Petitioner to

execute a knowing, intelligent, and voluntary waiver of the right to counsel at trial.

In addition, Respondents claim that Petitioner forfeited his right to counsel, or, in

the alternative, waived by conduct that right.

Prior to addressing the merits of Petitioner's claims, the court must

determine whether Petitioner has satisfied requirements pertaining to exhaustion

and procedural default on those claims presented.  Respondents argue that

Petitioner procedurally defaulted his claim that the colloquy was insufficient, under

federal law, to ensure that Petitioner understood that he was knowingly,

intelligently, and voluntarily waiving his right to counsel, because he failed to

develop such an argument in the state courts.[4]  For the reasons that follow, the

---

[4] Respondents also claim that Petitioner waived this claim by conceding that the trial
court conducted a proper examination in accordance with Rule 121(A), and its comment, of the
Pennsylvania Rules of Criminal Procedure.  Specifically, Petitioner had asserted in his brief to
the Pennsylvania Superior Court, "[Petitioner] agrees that the District Attorney **nearly verbatim**
recited the above language (language pursuant to Pa. R.C.P. 121)."  (Doc. 11-10, Ex.12 at 19.)
However, although the Superior Court acknowledged that Petitioner had conceded the colloquy
was sufficient, importantly, it did not rely on Petitioner's concession in its reasoning for rejecting
the argument.  Instead, the Superior Court addressed the merits of the claim, and after reviewing
the record on a whole, concluded that the colloquy satisfied the standard for such an inquiry
under Rule 121 and its comment and state law.  Further, the Superior Court found that, in
response to the colloquy, Petitioner never objected to representing himself at trial, even though
he had ample opportunity to do so.  Thus, this court rejects Respondents' argument that

court disagrees, and, thus, will review the petition on the merits of Petitioner's claims.

### A.   Exhaustion of State Court Remedies and Procedural Default

"A federal court may not grant a writ of habeas corpus unless (1) 'the applicant has exhausted the remedies available in the courts of the state . . . .'" *Henderson v. Frank*, 155 F.3d 159, 164 (3d Cir. 1998) (citing 28 U.S.C. § 2254(b)(1)). The exhaustion requirement is satisfied when the state courts have had an opportunity to review and correct alleged constitutional violations. *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1230 (3d Cir. 1992). The exhaustion requirement is not mere formality. It serves the interests of comity between the federal and state systems, by allowing the state an initial opportunity to determine and correct any violations of a prisoner's federal rights. *Crews v. Horn*, 360 F.3d 146, 151 (3d Cir. 2004).

A habeas corpus petitioner bears the burden of demonstrating that he has satisfied the exhaustion requirement. *Gonce v. Redman*, 780 F.2d 333, 336 (3d Cir. 1985). The threshold inquiry in the exhaustion analysis is whether the claims asserted in the habeas corpus petition have been "fairly presented" to the state

---

Petitioner waived this claim when he conceded to the presence of a sufficient colloquy, thus, procedurally barring him from presenting it in the instant habeas petition.

court.  *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Fair presentation requires that

the "substantial equivalent" of both the legal theory and the facts supporting the

federal claim are submitted to the state courts, and the same method of legal

analysis applied in the federal courts must be available to the state courts.  *Evans*,

959 F.2d at 1231; *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).  In

addition, the state court must be put on notice that a federal claim is being asserted.

*Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001).  The exhaustion requirement is

satisfied if a petitioner's claims are either presented to the state courts directly on

appeal from the judgment of sentence, or through a collateral proceeding, such as a

PCRA petition; it is not necessary for a petitioner seeking federal habeas relief to

present his federal claims to state courts *both* on direct appeal *and* in a PCRA

proceeding.  *Evans*, 959 F.2d at 1230; *Swanger v. Zimmerman*, 750 F.2d 291, 295

(3d Cir. 1984).

In addition, where a state court refuses to consider a petitioner's claims

because he failed to comply with an independent state procedural rule, his claims

are considered exhausted but procedurally defaulted, and the federal court is

generally barred from reviewing them.  *Sweger v. Chesney*, 294 F.3d 506, 520 (3d

Cir. 2002) (explaining, "[f]ederal courts may not hear claims that have been

procedurally defaulted unless petitioner can meet his burden to excuse the default.").

Respondents argue that when raising the sufficiency of the colloquy issue in state courts, Petitioner failed to explicitly state that his claim was based on the Sixth Amendment, and, as such, the state courts were never put on notice that a federal claim was being asserted by Petitioner.  In support of this argument, Respondents acknowledge that Petitioner cites to the Sixth Amendment, but assert that his claims are only "couched in terms of both the Sixth Amendment and the Pennsylvania Constitution."  (Doc. 11-2, Respondents' brief in opposition to the petition at 18.)  Having reviewed Petitioner's claims presented to the state courts, the court concludes that Respondents' argument here fails because the language in Petitioner's brief to the Superior Court was sufficient to put that court on notice of a federal constitutional issue.

In his brief on direct appeal to the Superior Court, Petitioner raised one issue: "The trial court erred in allowing [Petitioner] to proceed with trial under his own representation where [Petitioner] did not knowingly, voluntarily and intelligently waive his right to counsel."  (Doc. 11-10, Ex. 12 at 13.)  However, Petitioner's argument was two-fold.  First, Petitioner claimed that the trial court denied him the constitutional right to counsel when it permitted the withdrawal of

15

Petitioner's privately-retained counsel.[5]   Second, Petitioner challenged the

sufficiency of the colloquies which occurred on November 6, 2001, and prior to the

commencement of the jury trial on December 3, 2001.  Petitioner framed his

argument pertaining to waiver of his right to counsel in both state and federal law.

He asserted,

> Appellant submits that he was denied his right to counsel
> under the 6th Amendment to the United States
> Constitution and Article 1, Section 9 of the Pennsylvania
> Constitution.
>
> *   *   *
>
> Both the United States Supreme Court and the
> Pennsylvania Supreme Court have consistently ruled that
> legal counsel 'is an absolute necessity in a criminal trial
> . . . .' *Commonwealth v. Atkins*, 233 Pa. Super 202, 206,
> 336 A.2d 368, 371 (1975), quoting *Commonwealth v.
> Kennedy*, 451 Pa. 483, 488, 305 A.2d 890, 893 (1973).
> *See also, Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct.
> 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372
> U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).  The 6th
> Amendment to the United States Constitution and Article
> 1, Section 9 of the Pennsylvania Constitution make this
> "absolute necessity" an absolute right.

(Doc. 11-10, Ex. 12 at 12-13.)

---

[5] In its opinion filed September 28, 2005, the Pennsylvania Superior Court held that
Petitioner waived this issue by failing to object to counsel's withdrawal at either the November 6,
2001, hearing or immediately prior to trial when questioned by the trial court.  (*See* Doc. 11-10,
Ex. 14 at 5-6.)  Petitioner has not raised this issue here.

The court concludes this language was sufficient to put the Superior Court on notice of a federal constitutional claim involving a waiver of the right to counsel.  Therefore, the court finds that Petitioner has not procedurally defaulted his claims, and, thus, turns to the standards of review for Petitioner's claims.[6]

## B.      Applicable Standards of Review for Petitioner's Claims

"The Antiterrorism and Effective Death Penalty Act of 1996 [("AEDPA")] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).  The AEDPA requires that a petition for writ of habeas corpus filed by a state prisoner be analyzed pursuant to the standard set forth in 28 U.S.C. § 2254(d).  This section provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

---

[6] Even if the court were to accept Respondents' argument here, the court may proceed to a review of the merits based on 28 U.S.C. § 2254(b)(2), which provides that an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.  Thus, because the court finds the petition to lack merit, it would have been unnecessary to make a determination in this case as to whether the claim was fairly presented in the state courts.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The "contrary to" provision contained in section 2254(d)(1) has been evaluated as follows:

> [T]he inquiry must be whether the Supreme Court has established a rule that determines the outcome of the petition. Accordingly, we adopt *O'Brien's* holding that "to obtain relief at this stage, a habeas petitioner must show that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." In other words, it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome.

*Matteo v. Superintendent, SCI-Albion*, 171 F.3d 877, 888 (3d Cir. 1999) (quoting *O'Brien v. Dubois*, 145 F.3d 16, 24-25 (1st Cir. 1998)). The appropriate standard for the "unreasonable application" clause is

> whether the state court's application of Supreme Court precedent was objectively reasonable. The federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted

18

> in an outcome that *cannot reasonably be justified under
> existing Supreme Court precedent*
> . . . .[T]he primary significance of the phrase "as
> determined by the Supreme Court of the United States" is
> that federal courts may not grant habeas corpus relief
> based on the state court's failure to adhere to the
> precedent of a lower federal court on an issue that the
> Supreme Court has not addressed.  Thus, in certain cases
> it may be appropriate to consider the decisions of inferior
> federal courts as helpful amplifications of Supreme Court
> precedent.

*Matteo*, 171 F.3d at 889-90 (emphasis added).

Section 2254(e)(1) sets forth the presumption of correctness provision that greatly heightens the degree of deference paid to a state court's findings of fact. The burden is on the petitioner to rebut the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Ultimately, after application of this analytical framework to Petitioner's issues, the court concludes that the state courts have not come to an improper conclusion in determining that the colloquy was sufficient to establish that Petitioner knowingly, intelligently, and voluntarily waived the right to counsel.

C.    **Petitioner's Claims for Relief**

Petitioner's claims that (1) the colloquy was insufficient to effect a knowing, intelligent and voluntary waiver of his right to counsel, and (2) the trial court did not adequately perform its constitutional responsibilities with regard to the

19

colloquy, essentially challenge the voluntariness of his waiver of the right to counsel prior to his trial. As such, the court must initially set forth the standard of review of a petitioner's waiver of that right to counsel.

### 1.    Legal Standard - Waiver of the Right to Counsel

It is well established that the Sixth Amendment embodies not only the substantive right to counsel but also the right to proceed without counsel at trial. *Faretta v. California*, 422 U.S. 806, 813-14 (1975); *United States v. Stubbs*, 281 F.3d 109, 116 (3d Cir. 2002). The Sixth Amendment thus embodies two competing rights because exercising the right to self-representation necessarily means waiving the right to counsel. *Buhl v. Cooksey*, 233 F.3d 783, 789 (3d Cir. 2000). As stated in *Buhl*, "It is axiomatic that a criminal defendant's waiver of a constitutional right must be voluntary, knowing and intelligent. Therefore, the constitutional right of self-representation in a criminal case is conditioned upon a voluntary, knowing and intelligent waiver of the right to be represented by counsel." *Buhl*, 233 F.3d at 789.

Furthermore, "[a] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege" and must be the product of a free and meaningful choice. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). In considering such a waiver, courts "do not presume acquiescence in the loss of fundamental rights." *Id.* In addition, "courts indulge every reasonable presumption against

waiver of fundamental constitutional rights," such as the right to counsel. *Id.* In order to protect the right to counsel, the Constitution requires that any waiver of that right be the product of the voluntary exercise of free will. *Faretta*, 422 U.S. at 835.

Before deciding a defendant's request to proceed *pro se*, "the trial court [bears] the weighty responsibility of conducting a sufficiently penetrating inquiry to satisfy itself that the defendant's waiver of counsel is knowing and understanding as well as voluntary." *United States v. Peppers*, 302 F.3d 120, 130-31 (3d Cir. 2002); *Stubbs*, 281 F.3d at 118; *see also United States v. Welty*, 674 F.2d 185, 187 (3d Cir. 1982) ("Since the decision to proceed *pro se* involves a waiver of the defendant's sixth amendment right to counsel, the district court . . . has the responsibility of ensuring that any decision by the defendant to represent himself is intelligently and competently made.").[7]

In conducting this inquiry, "[p]erfunctory questioning is not sufficient." *Welty*, 674 F.2d at 187.  Rather, a court must engage in a "penetrating and

---

[7] Although *Welty* was decided following direct appeal from a state court decision, "[t]he same standard for determining whether a defendant waived his right to counsel applies in federal court habeas corpus review of state court proceedings." *Piankhy v. Cuyler*, 703 F.2d 728, 731 n.3 (3d Cir. 1983) (citing *Brewer v. Williams*, 430 U.S. 387 (1977)).  "If in a habeas corpus hearing, [a petitioner] convinces the court by a preponderance of the evidence that he neither had counsel nor properly waived his constitutional right to counsel, it is the duty of the court to grant the writ." *Johnson*, 304 U.S. at 469.

comprehensive examination of all the circumstances . . . ." *Peppers*, 302 F.3d at 131 (citations omitted); *Stubbs*, 281 F.3d at 118; *Welty*, 674 F.2d at 189. Furthermore, "[t]he determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson*, 304 U.S. at 464.

The purpose of the inquiry is to establish that the defendant: (1) has "clearly and unequivocally" asserted his desire to represent himself; (2) "understands the nature of the charges, the range of possible punishments, potential defenses, technical problems that [he] may encounter, and any other facts important to a general understanding of the risks involved"; and (3) is competent to stand trial.[8] *Peppers*, 302 F.3d at 132. To satisfy these criteria, the defendant must be "specific[ally] forewarn[ed] of the risks that foregoing counsel's trained representation entails," *id.* at 133, and he must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835; *Stubbs*, 281 F.3d at 118.

---

[8] Petitioner's competence to stand trial is not at issue.

There is, of course, "no talismanic formula for the court's inquiry." *Peppers*, 302 F.3d at 135; *see Welty*, 674 F.2d at 189 (noting that "we do not require a detailed listing of advice similar to that mandated for guilty plea proceedings conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure"). Nonetheless, in addition to the basic inquiry noted above, the Third Circuit Court of Appeals has noted that a district court must inform a defendant who wishes to proceed *pro se* that: "he will have to conduct his defense in accordance with the Federal Rules of Evidence and Criminal Procedure, rules with which he may not be familiar; that the defendant may be hampered in presenting his best defense by his lack of knowledge of the law; and that the effectiveness of his defense may well be diminished by his dual role as attorney and accused." *Welty*, 674 F.2d at 188.

Moreover, the court's review of a defendant's decision to proceed *pro se* is plenary, *see Stubbs*, 281 F.3d at 113 n.2, and the court "must indulge every reasonable presumption against waiver of counsel." *Buhl,* 233 F.3d at 790. When a waiver is deemed ineffective (*i.e.*, not knowing, intelligent, and voluntary), there is no harmless error review, and the conviction must be vacated and the case remanded for new trial. *Stubbs*, 281 F.3d at 117, 121.

With these principles in mind, the court now turns to a review of the merits of Petitioner's claims that his waiver of the right to counsel was not knowing,

intelligent and voluntary due to an insufficient colloquy and the trial court's failure

to perform its constitutional duties with respect to the colloquy.  In doing so, the

court will look to the state court decisions in order to determine whether those

decisions on Petitioner's claims are contrary to, or an unreasonable application of,

clearly established federal law, or whether those decisions are based on an

unreasonable determination of the facts presented in the state court proceedings.

*See* 28 U.S.C. § 2254(d).

    **2.**    <u>**Analysis**</u>

        **a.**    <u>**Knowing, intelligent, and voluntary**</u>

        Petitioner argues that the trial court erred in allowing Petitioner to

proceed to trial without counsel because his waiver of the right to counsel was not

knowing, intelligent, and voluntary.  The issue was presented to the state court in

the form of an appeal from the judgment of sentence.

    The trial court characterized Petitioner's appeal as follows:

> [Petitioner] challenges the sufficiency of the colloquy
> which took place before Judge Cherry on November 6,
> 2001. [Petitioner] contends that the information related to
> him during this proceeding was insufficient to constitute a
> waiver of his right to counsel.

(Doc. 11-10, Ex. 13 at 4-5.)  Then, framing its discussion in the Sixth Amendment,

the trial court applied the standard for waiver of counsel colloquy located in Rule

24

121(A) and related comment of the Pennsylvania Rules of Criminal Procedure,

which state, in pertinent part,

> (A) Generally
> The defendant may waive the right to be represented by counsel.
>
>       \*   \*   \*
>
> *Comment*: . . . [A]t a minimum, the judge or issuing authority asks questions to elicit the following information:
> (1) That the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel if the defendant is indigent.
> (2) That the defendant understands the nature of the charges against the defendant and the elements of each of those charges.
> (3) That the defendant is aware of the permissible range of sentences and/or fines for the offenses charged.
> (4) That the defendant understands that if he or she waives the right to counsel, the defendant will still be found by all the normal rules of procedure and that counsel would be familiar with these rules.
> (5) That the defendant understands that there are possible defenses to these charges which counsel might be aware of, and if theses defenses are not raised at trial, they may be lost permanently.
> (6) That the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa. R. Crim. P. 121(A) and comment.  Applying these factors to the facts on record,

the trial concluded that "[Petitioner] acknowledged receiving this information and

did not express any misunderstanding and/or inability to adequately comprehend the information provided. . . . [Petitioner] was made fully aware of all information necessary to constitute a knowing and voluntary waiver [sic] his right to counsel." (Doc. 11-10, Ex. 13 at 6.)

Petitioner then pursued the matter in the Pennsylvania Superior Court. The Superior Court framed Petitioner's issue as follows: "Our task . . . is to ascertain whether the trial court conducted a sufficient colloquy on the record to ensure that [Petitioner] understood that he was knowingly, intelligently, and voluntarily waiving his right to counsel." (Doc. 11-10, Ex. 14 at 6.) Framing its analysis of Petitioner's waiver in the standards set forth in the Pennsylvania Rules of Criminal Procedure and related case law, and reviewing the record on a whole, the Superior Court concluded that the trial court, through the colloquy on the record, had sufficiently inquired into all areas set forth in the rules in order to determine that Petitioner had knowingly and voluntarily waived his right to counsel. Specifically, the court noted that, "[Petitioner] at no point objected to representing himself at trial, and further that he had ample opportunity to do so." (Doc. 11-10, Ex. 14 at 7.) Finally, the court concluded, "Our review of the record as a whole and particularly the notes of testimony from the November 6, 2001, conference reveals that all of the above noted areas of concern were covered with [Petitioner], and

26

[Petitioner's] waiver of counsel was knowing and voluntary.  Therefore, Judgment of Sentence is affirmed." (Doc. 11-10, Ex. 14 at 9.)

Petitioner argues that the state court erred based upon the fact that he did not voluntarily waive his right to counsel and that there was not a proper colloquy conducted.  However, case law does not require that waiver of the right to counsel always be voluntary; nor does it always require a colloquy.[9]  Nevertheless, as the state court decisions point out, Petitioner has not demonstrated that his waiver of the right to counsel was anything but voluntary.  The controlling case law upon which the Pennsylvania state courts relied provides that "[a]n individual may certainly waive a constitutional right.  However, a waiver is only valid if made with knowledge and intelligence." *Commonwealth v. Payson*, 723 A.2d 695, 700 (Pa. Super. 1999).  In *Payson*, the defendant argued that he was forced into going forward without counsel.  The Superior Court agreed, but based its conclusion on its finding that the defendant's waiver of counsel was invalid because either some

---

[9] Case law does not require that relinquishment of the right to counsel always be voluntary or affirmative to be constitutional.  In *U.S. v. Goldberg*, 67 F.3d 1092 (3d Cir. 1995), the Third Circuit Court of Appeals detailed three ways in which the right to counsel is relinquished: waiver, forfeiture, and waiver by conduct.  *Id.* at 1099-1101. Respondents devote much of their brief in opposition to the petition to an argument that Petitioner's decision to proceed *pro se* satisfies any one of these three delineations of the relinquishment of the right to counsel.  The court, however, need not wade through Respondents' argument because, upon review of the state court decisions, the court has determined that those decisions are in line with United States Supreme Court precedent.  *See infra* at 22-23.

or all of the points listed in Rule 121 of the Pennsylvania Rules of Criminal

Procedure were not addressed in the colloquy.  *Id.* at 703.

In the present case, the state courts analyzed the record in the same fashion

as the court did in *Payson*, but determined that each element of the standard set

forth in Rule 121 was satisfied by the colloquy.  Further, the state courts noted that

Petitioner acknowledged receiving the information on waiver, did not express any

misunderstanding as to the nature of that information, and at no point objected to

representing himself at trial.[10]  Because the case law upon which the state courts

rely in denying Petitioner's claim is clearly in line with the United States Supreme

Court precedent, it cannot be said that the state court's determination here was an

unreasonable application of clearly established federal law.

The court has considered Petitioner's facts in support of his claim and finds

that he has not established that the state court conclusions resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established

federal law, as determined by the Supreme Court of the United States.  Nor has he

established that the proceedings resulted in a decision that was based on an

---

[10] In his petition and reply to Respondents' brief in opposition to the petition, Petitioner raises, for the first time, an argument that his waiver of counsel was for then retained counsel (Attorney Glace), not future counsel.  (Doc. 2 at 14; Doc. 14 at 8.)  Likewise, Petitioner also raises an argument that he should have been provided standby counsel.  (Doc. 2 at 15-16; Doc. 14 at 6-7.)  The court is barred from addressing such issues, as they were never presented to the state courts and, thus, have clearly not been exhausted.  *See* 28 U.S.C. § 2254(b)(1)(A).

unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Clearly, the state court's application of Sixth Amendment principles as reflected in the requirements of Rule 121(A) of the Pennsylvania Rules of Criminal Procedure was not unreasonable.  Consequently, the petition will be denied as to this claim.

### b.   <u>Trial court's duty to colloquy</u>

In light of the court's decision that the state court decisions relating to the sufficiency of the colloquy and Petitioner's waiver of the right to counsel were not contrary to, or involved an unreasonable application of, clearly established federal law, it cannot be said that the trial court did not adequately perform its constitutional responsibilities regarding the colloquy.  Thus, the petition will also be denied as to this claim.

## D.  <u>Conclusion</u>

For the reasons set forth above, Petitioner has failed to meet his burden and both issues will be denied on the merits.  An appropriate order will issue.


                   s/Sylvia H. Rambo
                   SYLVIA H. RAMBO
                   United States District Judge

Dated:  January 25, 2007.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**JAMES CHARLES YOUNG,**    :
               :
     **Petitioner**    :   **CIVIL NO. 1:CV-06-01178**
               :
**v.**            :   **(Judge Rambo)**
               :
**DONALD KELCHNER,** *et al.,*   :
               :
     **Respondents.**   :

## ORDER

  In accordance with the foregoing memorandum, it is hereby **ORDERED** that:

  1.  The petition for writ of habeas corpus (Doc. 1) is **DENIED**;

  2.  The Clerk of Court is directed to **CLOSE** this case;

  3.  There exists no basis for the issuance of a certificate of appealability.


         s/Sylvia H. Rambo
         SYLVIA H. RAMBO
         United States District Judge

Dated:  January 25, 2007.

1